May it please the Court. My name is Tom Zlacket. I'm a lawyer from Tucson, and I represent Randy Bachrach, who is here in the courtroom this morning, along with my co-counsel, Kevin Coble. I hope to reserve a few minutes for rebuttal, but having been on both sides of an appellate bench over the course of my 50 years as a lawyer, I know how difficult that can be, especially if you talk slow, like I do. But I'm going to give it my best shot. I would like to discuss the remediator issue first, but before I get to that, I would like to enter a mild protest to that portion of Covenant's brief that includes facts that came from the second trial on the issue of damages. Those facts were never before Judge King when he issued his order of remediator as an alternative to a new trial. And that evidence has no place here because it can only be put before you for one purpose, and that's to suggest that Randy Bachrach's relation with his deceased son was troubled. And that's the conclusion they want you to reach. I suggest to you it is inappropriate, you should not consider it, and I trust you will not. No, we take the remediator decision on the facts that existed at the time. That's the only thing you can do, the facts that existed at the time that the judge ruled. This is a most unusual case. The strategy pursued by Covenant is kind of the same strategy that the Fifth Circuit described, and we have tried to set it forth in page 28 of our opening brief. In Esposito v. Davis, the Fifth Circuit says, Interestingly enough, the appellants did not seriously contest any of the damage evidence. In fact, during their jury argument, the appellants never discussed the quantum of damages. We are puzzled, if not dismayed, that the appellants complain after the fact of the amount of the That's this case. That is exactly what happened here. These lawyers put on no case. They admitted liability. They called no witnesses. They offered no physical evidence. They only cross-examined Randy Bachrach for 30 minutes. They never suggested a damaged figure to the jury during closing argument, even though Bachrach's lawyers had asked for sums that were huge, sums that were far in excess of what the jury actually awarded when it handed down its verdict. Like the Fifth Circuit, I'm puzzled, if not dismayed, by the defense's complaints now made after the fact. In my judgment, they deserved no help from this Court. They deserved no help from the trial court for their feeble efforts, simply because they're unhappy with the amount. And that's what, in fact, happened here. My question really goes to whether the Court applied the Arizona standard or mixed and matched that with some Ninth Circuit and Federal law standards on remitted or so. As I read the Arizona law, one of the baselines is that the verdict has to shock the conscience. And I'd be interested in your comments on whether what the Court did say was irrationally high in light of the evidence, whether that is a shock the conscience standard or that's a different standard. I wish I could answer the question, Your Honor. There is no doubt that Covenant prodded this trial judge over and over to use the outrageous, shocking, the conscience language. If you look at the motion for new trial, they said it over and over and over again. And even Judge King, in his order, starts out by saying Covenant suggests that this verdict was, and I'm paraphrasing, but outrageous and shocking to the conscience. And yet he never reached that standard. He never reached that conclusion. I also would point out to you this, that when he starts to talk about the standards to be applied, he cites only three Arizona cases, all from the Court of Appeals, none from the Arizona Supreme Court. And then he cites a standard that comes from a Ninth Circuit case out of California. And I'm troubled by that. There is plenty of law in Arizona on this subject, all from the Supreme Court of Arizona. And this Court has indicated that it has a preference for Supreme Court decisions out of the various states. So it seems to me that the judge simply went awry. And he's given us no explanation, really, for why he reached the result he did, other than the fundamentally flawed exercise of comparing verdicts, which I will reach in a moment. JUSTICE GINSBURG Let me just go back to your Fifth Circuit case. You don't suggest if the, even though the defense didn't put on an affirmative defense, that if the verdict was a billion dollars, that it still wouldn't be subject to review and possible remitted. JUSTICE BREYER I'm sorry, I didn't catch that. JUSTICE GINSBURG If the verdict was a billion dollars, even if they put on no case, it wouldn't matter, right? It would still be on the table for whether that shocked the Congress. JUSTICE BREYER Of course. Because I think the Seventh Amendment — you know, the Seventh Amendment is the basis for the review of all remitteders. Covenant argues in its brief that so long as you give a litigant an alternative of remitter, the Seventh Amendment is satisfied. That's a silly argument, because if that's true, we have no reason to be here, and no case in which a remitter has been issued would ever be subject to review. I also want to point out that the Arizona Constitution, Article 2, Section 23, says the right to trial by jury is inviolate. It uses that word, and that's a pretty strict word. But here's an answer to your question. It seems to me that if the verdict was a billion dollars, that would ring so loudly as shocking everybody's conscience. The courts, the societies, it would be repugnant, it would be outrageous, it would be all of those things that a trial judge has the duty to prevent. And so I'm not suggesting that there is not a number somewhere that would have reached that threshold. But I don't believe $3.7 million in a wrongful death of a child case reaches anywhere near that threshold. And this judge didn't say that it did, because he didn't use that threshold. He used the irrationally excessive test, which I can't find any justification for in any of the cases. I do believe that the conscience of the court being offended, shocking the conscience of the court, I believe those are terms of art, terms of judicial art. You can find them throughout all of the case law, from not just Arizona, but from jurisdictions across the country, talking about when it's appropriate for a judge to interfere with the unique obligation and right of a jury to decide damages, especially in a personal injury case, where that is a tough job. There is no book we can look at and decide how much an injury is worth. This jury was unanimous. This jury had a chance to listen to Randy Bachrach talk about his son. And there is no basis for assuming that this trial judge was in any better position hearing the same testimony to reach a different conclusion as to the value of that loss. You were going to mention, I think I got you sidetracked on another issue, but the view that you have on this comparison of other Arizona verdicts. Yes, it is a fundamentally flawed process in my judgment. We have two Arizona cases that I've cited to you that say it is not favored. The only thing Covenant comes up with is a trial court in Pima County, where I'm from, a trial court that used a comparative analysis in reducing a $40 million jury verdict for the death of a child to $12 million. They don't talk about that size of a verdict. They only use it to justify the comparative analysis. Well, you know, I understand your point on that. And I agree that you can't, trial judges shouldn't use comparative verdict analyses exclusively. But don't you think it informs a decision about whether or not it's outside? I mean, if you're looking at something that is clearly an outlier case to begin with, then it seems to me that informs the decision. Here's why it might not. Here's why I think I disagree with you, Judge, respectfully. These comparative analyses are done on the basis of case summaries. There's no detail provided, nothing. In this particular case, this judge discarded 300-plus verdicts, 300-plus results because he said, I don't have the time to look at all of them. Right. Now, I wasn't talking about his particular methodology. I was talking about the comparative analysis to begin with. I mean, I think if done properly, at least it informs the threshold question, is this an outlier case? Then you get to the secondary question, does it meet the other standards? Because if it's well within the range of verdict range, then it probably doesn't even reach the level of additional scrutiny to see whether it checks the confidence. I think there's a problem with it. I've already mentioned you don't know the real facts because you're getting a summary. It depends on the parameters you're going to impose. If you assume, as this judge did, that we're only going to take motor vehicle accidents where kids, adult kids, are killed, I don't understand the rationale of that. To me, I lose my child, I don't care whether it's an automobile accident or what the circumstances are at the hands of a tortfeasor. I'm grieving just the same. He also uses a parameter of an adult child because he believes that an adult child, the relationship between a parent and an adult child changes. Well, I agree it changes. In my case, I have four kids and I'm closer to them now than I ever was when they were growing up. And one of them is in his 50s and the rest are in their 40s. So I think you would get a real disagreement among mothers and fathers about these parameters that a judge tries to impose and that's why I think that it's really hard and that's why the Arizona cases we cited say this is fraught with land mines, this kind of an analysis is difficult. Even Judge King said in his order twice, this is kind of a tough thing to do. But he went ahead and he did it anyway. Well, I've seen many times when the shoe's on the other foot where plaintiff's attorneys have argued, you see, look at these other verdicts, this is not an outsized verdict because we have all of these others. I mean, it cuts both ways depending on the case. I understand and I understand the argument that can be used. I'm down to two minutes but let me talk quickly about punitive damages. We cited to you a case that just came out of the Arizona Court of Appeals where the court ordered a separate trial, a new trial on punitive damages and that's what we think we're entitled to here. The facts of this case are egregious enough to meet the standard of the Arizona Supreme Court on punitives since the Linthicum decision. Much has been said and much of that decision has been bastardized by lawyers and by some courts to make it appear that we have such a strict standard in Arizona that punitive damages have gone the way of the dinosaur. That's simply not true. The case that we have cited to you dealt with a nursing home or a hospital that ignored a patient for 12 days and the judge, the appellate court set it back and said there's enough here for punitive damages. Take a look at the facts of this case. You've got somebody who's driving over, oh by the way, they want to argue those facts and when you look at their brief they are arguing controverted facts. That's not appropriate under a Rule 56 motion for summary judgment. That alone should have precluded the granting of a summary judgment pre-trial. Now perhaps the court might have at trial having heard the evidence decided I'm not going to give a punitive damage instruction to the jury. I understand that. That happens. But pre-trial on a motion for summary judgment taking these facts and saying they don't rise to the level of a conscious disregard for the dangers created to others and again I'm paraphrasing but I'm close. They don't rise to that? I think that the court might have heard that. Thank you very much. Good morning, your honors. May it please the court. Let me start with the conditional remitter argument. The Arizona Supreme Court has declared that trial judges in Arizona have quote substantial latitude in deciding whether to upset the jury's verdict by ordering a new trial or remitter. That's the Hutcherson case from the Arizona Supreme Court just 10 years ago. Can you move your mic a little bit? There you go. Thank you. Is that better, your honor? Yes. That same decision, the Hutcherson decision from the Arizona Supreme Court, the Arizona Supreme Court explained that a trial court's ruling on remitter because of an excessive verdict will generally be affirmed because it will nearly always be more soundly based than an appellate court's can be. That's a quote from the Hutcherson decision as well. And here what the trial court did was exercise that very type of discretion, the very discretion that the Arizona Supreme Court has explained is properly in the hands of the trial court. The trial court began first by rejecting our argument, Covenant's argument, that the verdict was the result of passion and prejudice. Now passion and prejudice, a finding of passion and prejudice under Arizona Supreme Court case law would have required a new trial, not a remitter. And that's the Stolkup decision, Arizona Supreme Court 1953. And there's other cases as well. However, despite finding no passion and prejudice in this case, the court determined that the damages did not support the verdict, that the verdict, that the evidence presented at trial did not support the damages award. And this goes, Judge McKeown, to your question. The judge did not mix state and federal standards. The judge very correctly applied the two-step test that I just described. First, look at passion and prejudice. If there's passion and prejudice, you get a new trial, no remitter. But if there's no passion and prejudice, you move on to look at excessiveness. And excessiveness at the trial court level is not determined by an outrageousness standard. It's simply a simple test as to whether the damages are excessive as compared to the verdict. And I would direct this Court to the Young Candy decision from the Arizona Supreme Court, 1962, where the Arizona Supreme Court explains this very analysis. And I'll just quote that passage from the Arizona Supreme Court. In describing the passion and prejudice part of the test, the Court says, in short, the damages must be flagrantly outrageous and extravagant, or the Court cannot undertake to draw the line, for they have no standard by which to ascertain the excess. And in that case, the Supreme Court was talking about itself at the appellate level. And it says, the question is whether the verdict rendered here is so manifestly unfair, unreasonable, and outrageous as to shock the conscience of the Court. And then it answers that question in the negative. Our answer to this query is in the negative. But then it goes on. And the Court says the remaining question, so now we're beyond the question of outrageousness and shocking the conscience. It says the remaining question is whether the verdict is an exaggerated measurement of damages and should be reduced or left undisturbed. The jury and the trial court are in a much better position than the appellate judges to measure and determine the damages that will compensate the plaintiffs for his injuries. But you know what? What's left out of here, and let me tell you where I'm having some questions about this case, is I look through the district court opinion, and I don't see Arizona law. I don't see shocks the conscience. I don't see under Hutchison that you have to review the evidence in light most favorable to upholding the verdict. I don't see under Hutchison that you have to have, if there's any substantial evidence that a reasonable person could reach a result, we will affirm the judgment. So that's the Arizona law, and the bulk of this district court's decision is on jury comparison, which everybody agrees is disfavored and, as the Arizona courts say, a little bit dangerous. So it's not clear to me that the court applied the correct Arizona standard, and maybe you can comment on that and point me to where you think he did incorporate all of these Arizona elements. Yes, Your Honor. First of all, I think part of the difficulty here may arise from the fact that this was a very short trial. There was only one pertinent witness, Mr. Bacharach himself. And so this is not a case like the Tenth Circuit case that plaintiff has referred this Court to, the Prager case, where there was a lot of conflicting evidence, and the judge essentially substituted his view as to which evidence should be believed and which evidence should not be believed, and therefore subsumed the role of the jury. The evidence here as to Mr. Bacharach's relationship with his son was basically undisputed. It was Mr. Bacharach's own testimony. And Mr. Bacharach testified on direct that he had a strained relationship with his son, that he had only seen his son, had not seen his son in the prior year, that he had only talked to his son a few times in the prior, in the few years leading up to the accident. There was no dispute about the type of relationship that Mr. Bacharach had with his son at the time of the accident. And the jury heard that. And the jury heard that as well. But juries sometimes go awry. But it wasn't a, we've already agreed it's not a passion or prejudice problem, so the question is why, you know, why isn't it one where a reasonable juror could make that determination? I mean, that's the standard in Arizona. Well, the standard is, that is a standard in Arizona, but the standard in Arizona also says that where the trial court determines that the evidence that he has heard does not support the verdict in his view, that the trial court has given wide latitude to make that determination. Of course they say that on appeal. You don't want all the courts of appeal coming in and upsetting things. But that really sidesteps the standard. Basically, it says that you're, whether there's evidence for a reasonable person to reach such a result. It's not a question of the trial court reaching the result. That's not the standard, actually. If you look at the Hutchison case, in terms of when they lay out the standard, I mean, the question on review has to give some deference to the jury. And I don't see that. Now, it could be that you would come to the same decision, or even maybe a higher remediator, but a different decision if you followed all of these. But I don't see, for example, that the court made a determination that this shocks the conscience, for example. And we have a lot of cases from many state jurisdictions on what shocks the conscience means. Where does he say that? Well, shocks the conscience, again, Your Honor, I would agree that the court did not say shocks the conscience in his ruling, but I would reiterate that that's not the trial court standard. The shocks the conscience standard is a type of passion and prejudice that applies at the appellate level and not at the trial court level. As I just described from the Young Candy decision, the Young Candy court first asked whether the verdict shocked the conscience, decided that it did not, but then moved on to determine excessiveness, not shock the conscience. So I would agree with Your Honor that this may not be a shock the conscience case, and I don't know whether it is or not, but it doesn't matter because that's not the standard. At the trial court level, the standard is excessiveness. And what the court did, I think, here was very logical. And again, the standard of review for this court under the Ninth Circuit's precedent is that the trial court's decision has to be illogical or implausible. Well, no, the first question is whether or not the trial court applied the right law. I mean, obviously it's an abuse of discretion standard on our review. That's deferential. But the question is, and I think this is what Judge McHughn's began, did the trial court apply Arizona law correctly? And what seems to be absent from the trial court's opinion is Arizona law says this, and this is how I apply Arizona law. So he didn't cite, I don't think, Young Candy. He didn't cite Hutchinson. Maybe he did. But I don't see the standard and say therefore I conclude that the Arizona law requirements are met and therefore I'm going to issue a remitted order. Well, with respect, Your Honor, I would disagree with that. He lays out, the trial court laid out the Arizona law on page 2 of its order. He explains that if passion and prejudice taint to the jury's verdict, the court must grant a new trial, which is exactly the standard. So far, so good. Then he says a verdict resulting from passion or prejudice must shock the conscience of the court. That's correct. A verdict can be shockingly large or small as a result of something other than passion and prejudice, however, and the size of a verdict in a personal injury action without more is not sufficient evidence of passion or prejudice. That's also correct. And he then goes on and says the evidence is viewed in light most favorable to sustaining the verdict. And he cites Mamo. And Mamo is an interesting decision because Mamo is exactly like this case. In Mamo, there was a wrongful death action. The jury came back with a verdict. It was a non-economic damages verdict. The trial court remitted that award, found that it was not shock the conscience, it was not passion and prejudice, but it was simply excessive. And the trial court reduced the award, and the appellate court in Arizona affirmed. That's Arizona law. And so I think that the trial court followed an Arizona law to a tee. And maybe he didn't cite every case that he could have cited. I just want to know the standard. Once you get beyond passion and prejudice, what's the standard in Arizona? The standard is excessiveness. And excessiveness is left within the trial court's discretion after having viewed the evidence in the light most favorable to the plaintiff, which is exactly what the trial court did here. The trial court... Basically, the bulk of his analysis are these jury verdicts, right? Well, he does look at jury verdicts, but that's, as plaintiffs have conceded, there's nothing in Arizona that precludes looking at other verdicts. And in fact, in wrongful death cases, it makes sense. And they say it's a dangerous practice for all the reasons. So then you go into, well, did he look at all the right ones? Did he have the right universe that he was looking at, or did he restrict it? I mean, I don't think you can leave everything to the discretion of the trial court when you have a jury verdict that came back fairly quickly in terms of their view of what this case was about. How do you justify the sort of minor subset of verdicts that he relies on? Well, with respect, Your Honor, this was not a minor subset of verdicts. We, the Covenant side, submitted every single verdict we could find in Arizona over 10 years without cherry-picking or selecting one versus another. Every verdict we found in Arizona that involved the death of an adult child in a car accident. And those were parameters that the Court said made sense in this case. The plaintiffs had every opportunity to submit different cases. They didn't. They submitted 19 cases from all over the country that had nothing to do with the facts of this case. They submitted only one Arizona case involving the death of an adult child, and it was a gruesome murder. And the award in that case compensated both parents, not even just one parent. So there was no way to tell how the award was divided between the two parents. Well, I mean, that's the hazard of these jury summaries that everybody has to deal with, right? That's right, Your Honor. And if the trial court had relied exclusively on a comparative verdict analysis, I would agree with Your Honor that that would be a potentially hazardous way to reach its decision. But the trial court didn't do that. The trial court did exactly what Chief Judge Thomas described, which was to say that the comparative verdict analysis was an indication that the award was excessive. And he says the issue then becomes whether the evidence supports such a large verdict. And he then proceeded to describe the evidence that he saw as the trial judge in the court, and he said, after listening to all the testimony, I am firmly convinced that the verdict is exceedingly high. This was not a close case in his view. It was not maybe shock to conscience, but there was no question in his mind that this was an excessive verdict in light of the relationship that he had heard described in the words of Mr. Bockrock himself. So I think for this court to substitute its judgment at this point doesn't make a lot of sense. And if the question is whether the court correctly applied Arizona law, for all the I think there's no question that it did. And the cases that I mentioned are not the only ones he cites. He goes on to cite Hanscom, for example. Hanscom is another case. A three-year-old plaintiff that could have lived another year. I mean, you know, that's not this case. No, but I'm simply talking about Hanscom in terms of whether it states Arizona law. And this is... Well, I'm not saying it didn't state Arizona law, but that seems like so what, the Hanscom case? Well, the Hanscom case was a non-economic damages case in which the Arizona Court of Appeals said that remitteders are available for non-economic damages cases for excessiveness, for this very ground. Well, he's citing it because you consider the age of the plaintiff. That's correct, Your Honor. That's why he cites it. That's why he cited it. That's correct. But I would just point out that he's reviewing the pertinent Arizona case law and applying the standard that is set forth in those cases. And plaintiffs don't point to any case that he did not consider or any standard that he should have considered that he did not consider. If I could turn briefly to the punitive damages argument, I think plaintiff wants to make it out as if Arizona as if we're arguing that Arizona has eliminated punitive damages. That's obviously not our argument. But Arizona has adopted the conscious disregard standard, which is a higher standard than many other states have adopted. In some states, recklessness or gross recklessness is enough. In Arizona, that's not enough. The courts have said over and over again, the Arizona Supreme Court has said over and over again that it's the defendant's motives that matter, the defendant's intentions. It's a subjective test that turns on the defendant's state of mind at the time of the incident. And in this case, even in the evidence, even if viewed in a light most favorable to plaintiff, the jury would have concluded that potentially the driver here, Mr. Simister, fell asleep at the wheel. Certainly not the type of action that reflects an evil mind or an evil hand being guided by an evil mind. This is just not that case. And the evidence, they try to make Mr. Simister seem like an evildoer by pointing to things that happened after the accident, like his statements to the officers. But again, under Arizona law, that's clearly irrelevant to the question of punitive damages. And they also point to things that happened long before the accident, which is, again, irrelevant under Arizona law. And I see I'm out of time. Thank you, Counsel. Thank you. Yeah, we'll give you one minute. May it please the Court, I really can't sit there and let Hutcherson be distorted. I wrote Hutcherson, and I know what's in it, and it did pertain exactly to the trial court. Secondly, Hanscom, which is the court, which is what this trial judge cited in his order, says this. When faced with a motion for new trial asserting that the damages were excessive or the verdict resulted from passion or prejudice or was not justified by the evidence, the trial court asks whether the verdict is so manifestly unfair, unreasonable, and outrageous as to shock the conscience. He cited that case, and then he never followed the standard. And it talks about the trial court. I just heard Counsel say it doesn't apply to the trial court. It applies to the trial court. And I thank you for the extra minute. Thank you, Counsel. The case, as heard, will be submitted for decision. Thank you both for your arguments and for coming to San Francisco. And we will be in recess for the morning.
judges: Thomas, Reinhardt, McKeown